Cite as 2025 Ark. App. 320

# ARKANSAS COURT OF APPEALS
### DIVISION IV
No. CV-24-208

| | |
|---|---|
| DEANNA FERGUSON AND RICK B. FERGUSON | Opinion Delivered May 21, 2025 |
| **APPELLANTS** | APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT [NO. 26CV-21-388] |
| V. | |
| MARY C. HARRISON AND MICHAEL S. HARRISON | HONORABLE THOMAS LYNN WILLIAMS, JUDGE |
| **APPELLEES** | REVERSED AND REMANDED |

**CINDY GRACE THYER, Judge**

Deanna and Rick Ferguson appeal from a decision of the Garland County Circuit Court directing a verdict in favor of appellees Mary and Michael Harrison. The Fergusons argue that the court erred in concluding as a matter of law that they were required to present evidence of monetary damages in order to submit their trespass claim to the jury.

The Fergusons own three lots on Lake Hamilton in Hot Springs. The Harrisons own a lot adjacent to the Fergusons' third lot. The common lot line between the properties is marked by a concrete curb and a row of trees and greenery that grow on the Fergusons' property. According to the complaint filed in this case, the Fergusons "maintained the tree row as a windbreak, for privacy, and to enhance the aesthetic beauty" of their property. In April 2021, Mary Harrison pruned back the vegetation on the Fergusons' side of the property line. On April 26, 2021, the Fergusons filed a complaint against the Harrisons, raising claims

of criminal trespass, statutory trespass, and common-law trespass. The Fergusons sought actual damages, treble damages, punitive damages, and attorney's fees.

The matter proceeded to a jury trial in December 2023. Rick Ferguson testified that he purchased the three lots in 2008. He explained that the hedgerow between his lots and the Harrisons' lot provided privacy. In the spring of 2021, he came home and saw that one-third to one-half of the hedgerow leading down to the lake was gone, and that there was a pile of brush on the Harrisons' side of the property line. Video clips and still photos were introduced to show the extent of the pruning. Rick denied giving Mary Harrison permission to do that sort of work. He called the act of someone coming on to his property "a huge violation," not because he was "married to the photinias," but because it was "[his] property" and he wanted the barrier for privacy. He acknowledged, however, that over time, the hedges had grown back.

When asked to quantify the damages or put a dollar amount on the harm done, Rick testified:

> What would that be? I mean, I don't know how much that would cost to put back. I don't think it would be a lot of money. That's not really what I'm here for, though. Missing the point. I want to see if the jury feels the same way I do, that you can't cut and come across on your neighbor their trees and then come to find out they've been doing it for fifteen years or whatever the number is, and consider you're doing me a favor because it looks better. I would never go over on their property and cut their dang trees down.

He added that the jurors should "[do] [w]hatever they feel like would be fair with them" and that he wanted punitive damages.

On cross-examination, Rick acknowledged that there had been an ice storm in February 2021 and that effective landscaping requires freeze-damaged greenery to be pruned back hard. He also conceded that the bill of assurances governing the use of the property requires homeowners to maintain plants growing along lot lines but that he had never trimmed the hedgerow himself. Rick again admitted that the hedgerow—depicted in photographs taken in April 2022—had grown back. And he agreed that after discovering the pruning, he did not call, email, write, or otherwise contact the Harrisons but instead immediately filed a lawsuit.

Mike Harrison testified that his wife, Mary, pruned the shrubbery between their lot and the Fergusons' lot. He said that he and Mary had maintained the hedgerow on their side for as long as they had lived in their house. They trimmed it "extensively" two years before this incident, hoping that Rick would "get the message that thing needs to be trimmed and it didn't happen." He did not directly communicate his dissatisfaction with the state of the hedgerow, however, because he wanted to avoid a confrontation with Rick. Mary Harrison testified that she had reached out to the Fergusons about the hedgerow in 2008, but she agreed that she had not asked permission to cut it back in 2021.

After the Fergusons completed their case-in-chief, the Harrisons moved for a directed verdict, asserting that Mary had a privileged entry or implied permission to come onto the Fergusons' land, thus defeating the idea that she was trespassing. They further asserted that there was no evidence that Mary "dug up" or "carried away" any trees or plants as required by Arkansas Code Annotated section 18-60-102 (Repl. 2015) to establish statutory trespass.

The Fergusons responded that there was a disputed question of fact about the nature of Mary's entry onto the land such that the question should go to the jury. They further noted that there were "a thousand ways to plead trespass" and that they were seeking an award of compensatory or nominal damages as well as punitive damages. The court then made the following remarks:

> In regard to the issues on Mary Harrison on two and three, I find there is a prima facie case on those issues and so far the case will go forward on those issues. Now, Counsel, y'all put me in a situation [where] I have to ask a very difficult question, the one I don't necessarily like to be involved in, but I have read the jury instructions. I listened to the testimony quite carefully and there's going to be--there's an interrogatory I think everybody has in here in regard to damages. I never heard a number. How do--how does a jury put in a number when there's been no expert testimony as to value of these damages and, matter of fact, Mr. Ferguson testified that he didn't have a number and I don't know how the jury can put a number in there when they've never been given one, number one, and, number two, we can't get to punitive damages unless compensatory damages are found on the front end. I'm not trying to make his argument for him. I'm in a difficult situation. But, Mr. Kemp, I'm just going to go to you and say what am I going to do with this verdict form, this interrogatory when I don't have a number[?]

The Fergusons' counsel suggested a number of ways that damages could be calculated. The court said, "I agree it's compensable, but what is the number?" Counsel replied that the jury could "find nominal damages. I think that they can find one dollar and that would be the bar through the punitive damages claim." The court reiterated, "But my problem is I have no evidence as to the cost of replacement of these plants. . . . I'm . . . going through these numbers and I don't have a single dollar value as to any of these plants that were cut down or not. I don't have it." The following colloquy then ensued between the court and counsel:

COUNSEL: The answer to that, Your Honor, is that this is a type of injury for which there is no dollar amount. I mean undisputedly everything that was cut down has grown back. That does not mean it's not an actionable trespass. It is an actionable trespass. You don't get to go on and cut down just because it grows back. To countenance that is the countenance to trespass and there does not have to be evidence of that in a dollar amount when cost of replacement of the plant is defined in the way that it was. I mean, otherwise, that would require the--that would require either of the plaintiffs to--to go on the stand and attempt to quantify.

COURT: The owner of the property can always testify as to value of his property. The owner of the property took the stand in this case and did not give me a value of the damages that he incurred.

COUNSEL: But that's not the measure of damages.

COURT: Could have put a witness on the stand and tell me what the value of putting new plants in. . . . [H]e put some plants in this property. I'm assuming they weren't free. . . . There's no evidence what these plants cost him or didn't cost him. I know he put something in. I heard him testify to that, but I never heard a value or a cost of putting those plants in.

. . . .

COUNSEL: To be clear, Your Honor, it is not as though what was intended to be put on record and not put in the record. This is legal argument that the plaintiffs are proceeding under. I'll submit to you on questions of evergreens they replaced there--that probably I would agree with the defendants that would not have been recoverable under this trespass theory any more than it would have been recoverable if he erected-- decided to erect a brick wall there to achieve the same end, but he wouldn't be liable for that or the cost of that. He's not liable for the cost of the few giant evergreens. There has to be an avenue available for these plaintiffs to recover the sanctity of their property by entry of a judgment that ensures that the defendants do not go on personal property again even when recovery is nominal.

. . . .

COURT:      I appreciate Mr. Ferguson's testimony when he says he wants something out there, a jury verdict, to tell the Harrisons they can't do that, I heard that testimony. I appreciate that mindset. I'm a big real property rights person myself, but I'm also a law person and I don't--at this point I have no testimony as to what the damages--the plaintiffs' damages that they're requesting. I don't. And so with that, I'm going to grant a directed verdict in regard to the fact there's no evidence in regard to damages and this case will be dismissed.

The Fergusons complained that the Harrisons did not move for directed verdict on the issue of damages and that the court "did that sua sponte"; the court acknowledged "that's exactly what happened" and dismissed the jury. A written order dismissing the Fergusons' claims with prejudice and granting judgment to the Harrisons was entered on December 22, 2023. The Fergusons timely appealed.

In their sole point on appeal, the Fergusons argue that the circuit court erred in directing a verdict in the Harrisons' favor for the reason that there had been no evidence regarding the amount of damages they sustained. They contend that a property owner who establishes an infringement of his or her property rights is entitled to nominal damages even if he or she does not show the extent of his or her actual damages. They urge that they were entitled to submit their case to the jury in order to "vindicate their property rights" and ask this court to reverse and remand for a new trial. We agree.

Our supreme court has held that "[a] trespass on lands is actionable, although the damage to the owner is inappreciable." *Reeves v. Jackson*, 207 Ark. 1089, 1093, 184 S.W.2d 256, 258 (1944). Nominal damages may be recovered for the infringement of a right. *Baker v. Armstrong*, 271 Ark. 878, 879–80, 611 S.W.2d 743, 745 (1981). In *Fritz v. Baptist Memorial*

6

*Health Care Corp.*, 92 Ark. App. 181,, 185, 211 S.W.3d 593, 595 (2005), our court explained

that

> [n]ominal damages may be awarded where a legal right . . . is vindicated but
> where an infringement produces no actual present loss, or where some compensable
> injury is shown but the amount of the injury [is] not proved. Some damages are
> presumed to flow from the violation of a legal right. The law in such cases will at least
> award nominal damages.

The court in *Fritz* also noted, however, that "[t]o warrant recovery of nominal damages, there

must be unlawful infringement of a property right." *Id.*

Here, the circuit court initially denied the Harrisons' directed-verdict motion because

it determined that there was a factual issue as to whether Mary Harrison's actions constituted

a trespass––i.e., whether there had been an infringement of a property right. It nevertheless

took that question away from the jury when it concluded that the Fergusons failed to prove

a specific dollar amount of damages. We find this tantamount to putting the cart before the

horse. By directing a verdict on the basis of an absence of proof of damages, the circuit court

preempted the jury's determination of whether there had been an infringement of a property

right in the first instance. This was erroneous. Accordingly, we reverse and remand for a new

trial.[1]

---

[1]The Harrisons suggest that we should not reverse and remand for a new trial when
the evidence showed that the Fergusons were entitled only to nominal damages. We disagree
with this assessment. As discussed above, it is true that nominal damages may be recovered
for the infringement of a right such as a trespass. *Baker, supra.* Here, however, the circuit
court's decision prevented the jury from determining whether a trespass had even occurred.
If no trespass was committed, which the jury could have found if it believed Mary Harrison's
testimony that she had a privilege to go onto the Fergusons' property, then the Fergusons

Reversed and remanded.

ABRAMSON and HIXSON, JJ., agree.

*Mann & Kemp, PLLC*, by: *Harrison Kemp*, for appellants.

*Fuqua Campbell, P.A.*, by: *Chris Stevens* and *Blake Hendrix*, for appellees.

---

would be entitled to nothing whatsoever. The only way to resolve that factual question is through a new trial.

We also briefly address the other argument raised by the Harrisons' brief wherein they suggest that because the Fergusons did not plead nominal damages, the issue is not preserved for appeal. The question of nominal damages was thoroughly discussed when the parties' attorneys argued their competing positions as the court considered the motion for directed verdict. The Harrisons cite no authority for the proposition that the Fergusons had to specifically plead nominal damages in their complaint.